FIRST NATIONAL BANK OF. ELLSWORTH, MINNESOTA, Appellant, v. A. W. RIPLEY, Sheriff, et al., Appellees.

**CHATTEL MORTGAGES:** Foreign Mortgage—Priority. A chattel mortgage validly executed and recorded in and according to the laws of a foreign state where the mortgagor then resides, and where the property is then situated, retains its priority over a subsequent mortgage executed and recorded in this state after the mortgagor has removed to this state with said property; and this is true even though the foreign mortgagee knew that the property had been removed to this state. (See Book of Anno., Vol. 1, Sec. 10015, Anno. 140 *et seq.*; 202 Iowa 1140.)

Headnote 1: 11 C. J. pp. 424, 425.

*Appeal from Lyon District Court.*—C. C. BRADLEY, Judge.

OCTOBER 25, 1927.

Contest between two chattel mortgagees. The facts appear in the opinion.—*Reversed.*

*Warren H. White,* for appellant.

*Fisher & Riter,* for appellees.

FAVILLE, J.—The mortgagor is one Meyeran. In the year 1921, Meyeran resided in Nobles County, Minnesota, which borders on the Iowa line. On the 9th day of December, 1921, he gave a chattel mortgage on certain of his property, which, on December 12, 1921, was duly filed for record in Nobles County, Minnesota, as provided by the laws of said state. This mortgage was transferred to appellant. Thereafter, and on or about the 1st day of March, 1922, the said Meyeran moved to a farm in Lyon County, Iowa, about 9 miles distant from his former residence in Minnesota. On or about the 19th day of December,

1922, Meyeran gave to the appellee Nagle a chattel mortgage on certain property, to secure an indebtedness, which mortgage was duly filed with the county recorder of Lyon County, Iowa, on December 29, 1922. Said mortgage covered in large part the identical property described in the appellant's mortgage. The appellant's mortgage was filed in the office of the county recorder of Lyon County on the 21st day of December, 1922. The sheriff was about to sell the said property under said Nagle mortgage when this action was brought to restrain said sale.

I.   Appellant's chattel mortgage was duly recorded, in accordance with the laws of the state of Minnesota. The property was removed to the state of Iowa, and the mortgagor thereafter gave a chattel mortgage thereon to the appellee. In the early case of *Smith & Co. v. McLean*, 24 Iowa 322, we said:

"  * * * a chattel mortgage valid under the law of the state where executed will be so held by the courts of a sister state to which the property may be removed."

In *Simms v. McKee & Stimson*, 25 Iowa 341, we said:

"The main question raised in the record was determined by this court in the case of *Smith v. McLean*, 24 Iowa 322. We held in that case that a mortgage of personal property, executed and recorded in another state in accordance with the laws thereof (the property when mortgaged being within such state), has the same force and effect to bind the property when removed to this state, and will be enforced here, as under the laws of the state where it was executed. This doctrine must be considered the settled rule in this state."

This has been the established law of this state since 1868. It is the rule recognized by the great weight of authority. In Goodrich on Conflict of Laws 356, Section 151, the rule is thus stated:

"The validity of a chattel mortgage is determined by the law of the situs of the property at the time of the mortgage. Rights created under a valid mortgage will be recognized in another state, as against the mortgagor or his creditors or subsequent purchasers from him."

In commenting upon this general statement, the author says:

"The typical situation is that in which property in one state is made the subject to a chattel mortgage executed there,

a transaction valid where made, and the mortgagee's rights are preserved by compliance with whatever local statutes there are as to recording the mortgage. Then the mortgagor takes the property into another state, where it is seized by one of his creditors or sold to a third party; neither creditor nor purchaser having knowledge of the mortgagee's rights. There is no record of the mortgage in the second state. The general consensus of judicial opinion in this situation is that the rights of the mortgagee are to be protected.''

In support of this rule the author cites the following authorities:

*Wray Bros. v. White Auto Co.*, 155 Ark. 153 (244 S. W. 18); Lorenzen Cases on Conflict of Laws (2d Ed.) 543; *Smith & Co. v. McLean*, 24 Iowa 322; *Langworthy v. Little*, 12 Cush. (Mass.) 109; *Farmers & Merch. St. Bank v. Sutherlin*, 93 Neb. 707 (141 N. W. 827, 46 L. R. A. [N. S.] 95, Ann. Cas. 1914B 1250); *Yund v. First Nat. Bank*, 14 Wyo. 81 (82 Pac. 6). Contra, *Allison v. Teeters*, 176 Mich. 216 (142 N. W. 340). See collection of cases in 64 L. R. A. 356, note; 35 L. R. A. (N. S.) 386, note; L. R. A. 1917D 942, note.

The American Law Institute, in Restatement No. 3 of the Conflict of Laws, Section 287, states the rule thus:

''If a chattel is validly mortgaged in accordance with the law of the state where it is situated at the time of the execution of the mortgage, and is then taken into another state, the mortgagee's interest in the chattel is recognized in the second state.''

It may be conceded that there are a few states that do not recognize this rule. We are, however, not disposed to depart from the rule long since announced in *Smith & Co. v. McLean*, supra, which has the sanction of the greater weight of judicial authority.

In 11 Corpus Juris 424, Section 33, it is said:

''The great weight of authority is to the effect that a chattel mortgage, properly executed and recorded according to the law of the place where the mortgage is executed and the property is located, will, if valid there, be held valid even as against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor, unless there

is some statute in that state to the contrary, or unless the transaction contravenes the settled law or policy of the forum.''

Many cases are cited in support of the text.

We hold that the lien of appellant's mortgage was senior and superior to that of the appellee Nagle, after the property was removed to this state, and was not lost merely by the fact of such removal.

II.   Appellee contends that the rule of comity by which the validity of a chattel mortgage duly executed and recorded in one state is recognized in another has no application where the mortgaged property is removed from the state where the mortgage was given, with the knowledge and consent of the mortgagee, and where the mortgagee fails to use diligence to recover it.   We are not called upon in this case to determine whether the lien of a mortgage duly executed and recorded in a foreign state will or will not be recognized in this state, where the mortgagee consents to the removal of the property from the state where the mortgage was executed.   There is no sufficient evidence in the record that would sustain a finding that the mortgagee gave consent to the removal of the property from the state of Minnesota.   The mere fact that he knew that the mortgagor removed from the farm where he was living in Minnesota, to a farm a few miles distant in Iowa, would not deprive the mortgagee of the right to enforce such mortgage.   Consent, even if sufficient to defeat the lien (which we do not determine), was not established in this case.

We are not disposed to acquiesce in appellee's contention that, where a mortgagee has knowledge that the mortgagor has removed the property from the state where the mortgage was given, to a foreign state, he is required ''to exercise diligence to recover the property.''   The legislature has not enacted any statute in regard to such a situation, and there is no requirement of our present law that such a mortgage shall be recorded, in order to preserve the lien in this state.   In the instant case, the mortgagor removed from Minnesota to Iowa on the first of March, and the appellant recorded its mortgage in Iowa in the following December.   There is evidence—which, however, is in conflict—tending to show that the appellee had actual notice of appellant's mortgage before he took his mortgage.   It may be that, under certain circum-

stances, a mortgagee in a foreign state would be estopped to claim that his mortgage should be recognized in this state, but the record in this case fails to disclose a situation that would justify the court in denying to appellant the lien of its mortgage, as against the subsequent mortgage of the appellee.

.Our conclusion is. that the judgment of the district court must be—*Reversed.*

EVANS, C. J., and STEVENS, KINDIG, and WAGNER, JJ., concur.